BEN BROWN *v.* THE STATE.

(*Nashville.* February 19th, 1887.)

1. CRIMINAL LAW. *Continuance. Discretion. General rule.*

A continuance in a criminal case rests in the sound discretion of the trial Judge, and his action in refusing to grant it, will not be reviewed on appeal, unless it clearly appears that he has improperly exercised, or grossly abused that discretion; and in no case will his action be reviewed, when it clearly appears that justice has been done, without any sacrifice of the rights of the accused.

Case cited and approved: Rexford *v.* Pulley, 4 Bax., 366.

2. SAME. *Same. Affidavit. Absence and sickness of witnesses.*

An application for continuance of a murder case, at the first term, is properly refused, where it is based on the affidavit of defendant, stating that three of his material witnesses (who had been summoned) were absent without his consent, and that one of them was sick, as he was informed; but failing to state that he believed the information, or that he did not have other witnesses present, by whom he could prove the same facts that the absent ones would depose to.

3. SAME. *New trial. Uncorroborated affidavit of defendant.*

The uncorroborated affidavit of a defendant, in a murder case, however material in its statements, is not, of itself, sufficient ground for granting a new trial.

4. SAME. *Same. Same. Undue excitement.*

A new trial will not be granted upon an allegation of undue excitement, based upon defendant's affidavit alone, corroborated by nothing except a newspaper article made exhibit thereto, which does not appear to have reached or influenced any member of the jury.

FROM DAVIDSON.

Appeal in error from the Criminal Court of Davidson County. MATT. W. ALLEN, J.

J. M. QUARLES, JNO. LAWRENCE, and J. C. NAPIER, for Brown.

Attorney-General PICKLE and R. SLOAN for State.

SNODGRASS, J.   Ben Brown, with others, was, on the 10th of February, 1886, indicted for the murder of Frank Arnold.   He obtained a severance, and was convicted on the 8th of March following, in the Criminal Court of Davidson County, of murder in the first degree.   His motion for a new trial and in arrest of judgment being overruled, and sentence of death pronounced, he appealed in error.

On the same day of the finding of the indictment the defendant was arraigned and plead not guilty, and the case was set for trial on the 24th of February.   The trial was not, in fact, commenced until the first day of March, and it continued until the 8th, on which day the verdict was rendered.

Before it was taken up for trial the defendant filed an affidavit for a continuance.   The only material ground alleged therefor necessary to be noticed was the absence of witnesses Turner, Compton, and Fitzgerald, the latter of whom was alleged upon information to be sick.   No belief of such information is averred.   These witnesses, it is stated, had been summoned, and were absent without consent, procurement, or contrivance of defendant; were within the jurisdiction of the

court, and could be brought to the next term. That their testimony was material to the defense, was also stated.

It was not stated that defendant had no other witnesses present by whom such material evidence could be made, nor, though the trial lasted eight days, was any other or further effort made to secure their attendance. In addition, after conviction, the defendant filed an affidavit setting forth several reasons for a new trial, but not averring or pretending that any injustice had been done him in consequence of the failure to have any testimony which either of these witnesses could have given. Being the first application for a continuance, in his affidavit therefor defendant was not required to state what the witnesses would prove; but when the affidavit was overruled, and defendant put upon his trial and convicted, if any real injustice was done him by reason of a forced trial in the absence of these witnesses, he would then certainly have disclosed what they knew, if he really regarded their evidence as important, and set forth for the inspection of the Court the facts he might have proven by them in his defense. It is inconceivable that a defendant, knowing of witnesses within reach who knew anything of material importance in his defense, and for whom he had tried to continue, would have made no effort during the eight days of the trial to secure their attendance, and would not, in his application for a new trial, disclose such evidence to the Court

to show the injustice done him. The fact that
he did not make any additional effort to compel
their attendance, and that through his zealous and
able counsel he makes no complaint of the failure
to get their testimony in such affidavit, and does
not intimate what either of these absent witnesses
knew or would testify in his favor, indicates clearly
that they knew nothing important to his defense.

Notwithstanding, then, his affidavit in reference
to this testimony, "it does not appear," to use
the language of this Court in *Rexford* v. *Pully,* 4
Bax., 366, "but what he finally had all the tes-
timony he desired" from this source.

Continuances, it has been repeatedly held by this
Court, are in the sound discretion of the Criminal
Judge, and his action in refusing to grant a con-
tinuance will not be reviewed unless it clearly ap-
pears that his discretion has been improperly exer-
cised or grossly abused. It will not be reviewed
in any case where it clearly and manifestly ap-
pears that justice has been done; and that this
result attained was not at the sacrifice of the
rights of the objecting defendant.

In this case it does clearly and manifestly ap-
pear that justice has been done, and without such
sacrifice.

That the defendant participated in the murder
for which he was convicted no member of this
Court entertains any doubt whatever, from this
record. Indeed, his guilt, upon the facts proven,
is not controverted, nor does his counsel rely upon

any error, except the one discussed and that supposed to be committed by the Court in overruling the motion for a new trial against the objections set up to the conviction by defendant in his affidavit, it being the *only* affidavit offered, to be noticed further on. No objection is made to the rulings of the Court upon the evidence, nor to the charge, nor is either open to any serious objection, and after a full, fair, and lengthy trial, within a few miles of the scene of the murder, and the home of defendant, the fact that the only objections which can be made to the judgment are of a purely technical character, is of itself a most persuasive indication of its correctness.

A brief statement of the facts is all that is necessary to demonstrate its correctness.

The defendant and the murdered man, Frank Arnold, were neighbors, living a few miles from the city of Nashville. Arnold was without family of his own, and kept house with only a sixteen - year - old boy for a companion. He owned the little house in which he lived, with about three and a half acres of ground around it, with a horse and wagon, plows, harness, tools, some little corn and hay, with one hog and some chickens, and other little household effects. He appears to have had also a small amount of money.

On the night of the 9th of November, 1885, about dark, Ben Brown called at his house, and finding him away left word with the little boy referred to, for Arnold to come and go hunting

with him that night. The boy delivered the message, and Arnold, taking his little dog with him, went, stating his object to go hunting as requested. He never returned, but about eleven o'clock that night the dog came back to the house without him. When seen by the boy next morning he had a cut on his head. About five o'clock the next morning (10th November) Ben Brown came to the house and woke the little boy up, and told him his Uncle Frank Arnold had gone to town (Nashville) to fix up his business, and was going to his old home in Kentucky to see his kinfolks; that Arnold said the boy should go to his (Brown's) house and stay until he returned, adding that as long as he had bread and meat and a place to stay the boy should also have them. He then told the boy to say that Arnold left Tuesday morning to go to town; to say this when he got into court; that the lawyers would halloo at him, and put him off in a little room. In explanation of the cut on the dog's head, he explained to the boy that the dog was trying to get on the car with Arnold, and the driving-wheel struck his head, and he thought killed him.

Before Arnold left that evening he locked the door of the stable as usual, it being his habit to lock the door at night, and put the key in his pocket. The next morning the boy could not get into the stable to feed the horse. That evening Brown brought him the key, and told him to feed the horse, which he did.

Brown came to Nashville, got some one to personate Arnold, and procured the forgery of a note on Arnold, dated the 10th day of November, 1885, payable to himself, for $100, and also a conveyance of Arnold's horse and wagon and feed, at the recited consideration $150 paid, and moved into Arnold's house, taking possession of all his property. He procured witnesses to agree to swear that Arnold had come to Nashville on the 10th of November, 1885, and spent three days here, and then left for Kentucky.

In the meantime, in January following the murder, Arnold's body and limbs (dissevered) were found in Nashville. The head could not be found, but was subsequently found on the Arnold place, and the remains were identified clearly as those of Arnold.

Brown reported that Arnold had gone to Kentucky and to Ohio, and that he had received a letter from him, which he also procured a witness to agree to prove, pretending that the letter was lost. He told various contradictory stories about it. He denied the killing to Dr. Cook, but admitted that he knew that Bill Brown killed Arnold; that Bill told him so on the night of the 9th of November, and he went out and saw the dead body lying there; and that Bill hired him to bring the body to town.

Many other facts and circumstances might be detailed which show the guilt of defendant, and which establish it independently of the testimony

of Bill Brown, who describes the killing and Ben Brown's participation in it with others, and the subsequent burial, mutilation, and disposal of the body. But as Bill Brown was an accomplice, and shown not to be worthy of credit, his testimony is only noticed for this explanation. Without it the proof is clear, full, and satisfactory that defendant is guilty of the murder.

The affidavit for a new trial made by defendant is unaccompanied by that of any other person, and it would be immaterial what it stated, as it could not alone be sufficient to require the Court to grant a new trial; for if convictions in cases of this character could be set aside upon the unsupported affidavit of a defendant, few, if any of them, would be allowed to stand. It is said, however, that the affidavit in reference to prejudice against the prisoner is sustained, and prevailing excitement is shown by the exhibit of an article from the *Daily American* accompanying the affidavit. It is sufficient answer to this that it is not alleged that the jury was influenced by the article exhibited or any other, or that any member of the jury ever saw it. Indeed, the one exhibited is alleged to have been published a day or two prior to the commencement of the trial. It must be presumed that the men selected for the jury were properly examined on this subject and all others before they were taken by defendant. It is not pretended in the affidavit that they were not so examined, or that they were influ-

enced by the papers or any outside communication or demonstration whatever.

It is further said that the excitement and hostility appear from the fact that the Court issued an order to the officer and guards in charge of defendant to arrest any one coming near him making hostile demonstrations. This only appears from defendant's affidavit. He asserts in it that such an order was made on appeal of defendant's counsel to the Court. All that there is in this, then, is that defendant swears his counsel asked the Court for such an order and the Court made it. Naturally and properly, the Court would have made such an order as that upon the application of defendant's counsel, whether the facts required it or not. The Court only ordered, taking the affidavit to be true, that the guards arrest any one who made improper or hostile demonstrations. If none were made, no arrests would follow. So the order, if made, proves nothing. It should have been made as a matter of course in this or any case on application, and does not show the existence of facts requiring arrests even; much less does it show the existence of a sentiment of hostility and excitement inconsistent with a fair trial. No arrests appear to have been made or to have been necessary. There may have been, and doubtless was, some indignation and excitement among some of the people of the city. It would hardly have been natural that none should have existed; but there is no evidence before us which can be

treated as sufficient to show that defendant could not have and did not have a fair and impartial trial.

It consequently follows that the judgment must be affirmed. It is therefore the judgment of this Court that the defendant be taken by the Sheriff of Davidson County to the jail thereof, and there safely kept in confinement until Friday, the 15th day of April, 1887; and on said day, between the hours of 8 o'clock A. M. and 4 o'clock P. M., within said jail, or within an inclosed yard of said prison if there be one, or within an inclosure erected for the purpose adjacent to the prison higher than the gallows, or so constructed as to exclude the view of persons outside thereof, and in the presence of no more or other persons than are allowed by law to be present, be by said Sheriff hanged by the neck until he is dead.

The usual judgment against defendant for the cost of the case will be entered.