STATE *vs.* WILLIAM G. COLE, WALTER BABCOCK and HARRY FENNIMORE.

1. CONSPIRACY—EVIDENCE HELD SUFFICIENT TO GO TO THE JURY.

In a prosecution against three of the assistants of a recorder of deeds for conspiracy to cheat and defraud the county, evidence *held* sufficient to go to the jury despite defendant's objection that the state failed to prove the conspiracy, or that defendants acted with a criminal motive, or that the recorder with whom they were accused of conspiring embezzled funds from county.

2. CRIMINAL LAW—JURY SHOULD NOT CONSIDER NEWSPAPER REPORT AS TO EVIDENCE.

Jurors should pay no attention to a statement in newspaper account of a pending trial that damaging evidence against defendants had been produced; it being improper for the newspaper to make such comment.

3. CRIMINAL LAW—PUBLICATION OF COMMENT ON EVIDENCE IN NEWSPAPER OF GENERAL CIRCULATION NO GROUND FOR NEW TRIAL.

Where defendants merely called to the attention of the court the publication in a newspaper of general circulation of a comment on the evidence, and it was not shown that any of the jurors had seen or read the article, and the court instructed jurors that they should not consider the same, defendants, who did not request the court to take any action, are not entitled to a new trial.

4. CONSPIRACY—GIST OF OFFENSE IS UNLAWFUL COMBINATION.

A conspiracy is a combination of two or more persons to do either an unlawful act or a lawful act by criminal or unlawful means, with unity of design and purpose; the gist of the offense being the unlawful combination.

5. CONSPIRACY—NO FORMAL AGREEMENT IS NECESSARY.

No formal agreement between the parties to a conspiracy is necessary, and it is sufficient that their minds meet understandingly, so as to bring about an intelligent and deliberate agreement to do the acts and commit the offense charged.

6.  CONSPIRACY—UNNECESSARY TO PROVE THAT ACCUSED AGREED TO DE-
    SIGN IN TERMS.

Though the common design is the essence of the offense of conspiracy, it is not necessary to prove that the defendants actually agreed in terms to that design, and to pursue it by common means, and if it is proved that the defendants pursued, by their acts, the same object, so as to complete it, the jury will be justified in the conclusion that they were engaged in the conspiracy.

7.  CONSPIRACY—CONSPIRACY MAY BE SHOWN BY "DIRECT" OR "CIRCUM-
    STANTIAL" EVIDENCE.

A conspiracy may be shown either by direct evidence, that is, by the admissions and declarations of the parties or co-conspirators, or by circumstantial evidence; that is, by facts and circumstances from which the existence of the conspiracy may be inferred.

8.  CRIMINAL LAW—TO WARRANT CONVICTION, CIRCUMSTANTIAL EVIDENCE
    MUST BE INCONSISTENT WITH ANY HYPOTHESIS BUT GUILT.

Where the evidence is solely circumstantial, the jury must be satisfied, not only that the circumstances are consistent with the defendant having committed the act or acts charged as constituting the offense, but the circumstances must be such as to exclude any hypothesis but guilt.

9.  CONSPIRACY—MUST BE A COMBINATION BY AT LEAST TWO PERSONS.

In order to constitute a conspiracy, there must be a combination to do an unlawful act by at least two persons in furtherance of a common design.

10.  CONSPIRACY—PARTY MAY ENTER CONSPIRACY LATE, AND IS RESPONS-
     IBLE FOR ACTS OF CONSPIRATORS.

A conspiracy may be formed and a party thereafter come in and be connected with the conspiracy, and in such case he is as guilty as he would be if he were in the first stage thereof, being deemed a party to all acts done by the others either before or after, and in furtherance of the common design.

11.  CONSPIRACY—IT IS NOT NECESSARY THAT GUILTY KNOWLEDGE BE IM-
     PARTED TO ALL DEFENDANTS AT ONCE.

While it is necessary in order to establish a conspiracy to show that defendants had guilty knowledge, it is not necessary that the guilty knowledge was imparted to all defendants at one and the same time, or by one and the same means.

12.  CONSPIRACY—ONE, KNOWING UNLAWFUL CHARACTER, WHO ASSISTS,
     IS A CONSPIRATOR.

One, understanding the unlawful character of the transaction, who assists in the prosecution thereof in any manner with a view toward forwarding the common purpose or scheme, is a conspirator.

13.  CONSPIRACY—UNNECESSARY THAT ACT SHOULD BE ACCOMPLISHED OR
     THAT PARTY PROFITED THEREBY.

While a combination or agreement to do an unlawful act must be shown in order to establish a conspiracy, it is not necessary that the act should be actually done, or, if done, that a party to the agreement profited thereby.

14.  CRIMINAL LAW—EFFECT OF EVIDENCE OF GOOD CHARACTER.

Evidence of good character is to be taken and considered by the jury in connection with all the other evidence, and given such weight as in their judgment it is entitled to.

15. CRIMINAL LAW—PRESUMPTION OF INNOCENCE UNTIL PROOF OF GUILT BEYOND A REASONABLE DOUBT.

In every criminal case including conspiracy, the defendant is presumed to be innocent until his guilt is proved to the satisfaction of the jury beyond a reasonable doubt.

16. CRIMINAL LAW—"REASONABLE DOUBT" DEFINED.

A reasonable doubt is such a real substantial doubt as remains in the minds of the jury after a careful and conscientious consideration of all of the evidence, and is not a speculative or mere possible doubt.

17. WITNESSES—PRISONER IN WORKHOUSE CAN BE BROUGHT IN TO TESTIFY ONLY BY APPLICATION TO COURT.

The proper procedure for bringing a prisoner from the workhouse to testify in the Court of General Session is by application to the court, made for that purpose.

*(April* 12, 1921)

PENNEWILL, C. J., BOYCE and CONRAD, J. J., sitting.

*Aaron Finger* and *Clarence A. Southerland,* deputy Attys. Gen., for State.

*Philip L. Garrett* for William G. Cole; *J. Frank Ball* for Walter Babcock and Harry Fennimore.

Court of General Sessions for New Castle County, March Term, 1921.

INDICTMENT, No. 19, March Term, 1921.

William G. Cole, Walter Babcock and Harry Fennimore were indicted for conspiracy with a certain Furman G. Cole (who was indicted separately at the same term for embezzlement, pleaded guilty and was sentenced prior to this trial) to cheat and defraud the county of New Castle, of the state of Delaware, of the sum of ten thousand dollars. Verdicts guilty.

The state offered evidence to show that during the period covering the alleged conspiracy, Furman G. Cole was Recorder of Deeds for New Castle county, and had previously appointed his father, William G. Cole, deputy recorder; Walter Babcock was an index clerk, and because of his long experience in the office under previous recorders, the recorder virtually made him acting deputy recorder, and Harry Fennimore, without any previous experience in the office, was made a transcribing clerk; that the basis of the

scheme for cheating and defrauding the county consisted simply in keeping a part of the papers left for recording from being entered on the fee book, which book was supposed to show the amounts collected for the recording of all papers left in the office for that purpose, and which was the book or record from which the county auditor checked up the receipts of the office with the amounts turned over to the county by the recorder; that the long established routine of the office was that papers left for recording during the day were immediately stamped by the person receiving the same with the day and hour, if required, of their receipt, and placed in a tin box provided for the purpose where they remained until the following morning, being locked up over night in the safe, the combination to which was possesed only by Furman G. Cole and Walter Babcock; that upon being removed from the safe the following morning, the box, supposedly containing all papers deposited in it during the preceding day, was emptied of its contents which then took the routine of going first to the fee clerk for preliminary entries in the fee book, then to the index clerk for preliminary entries in the index book, then to the transcribing clerks for recording, then back to the index clerk for final entries in the index book, then to the desk of the recorder for his signature to the certificate of recording, after which delivery slips were made out, the papers were delivered to the owners, the fees collected and returned, together with the delivery slips, from which slips the final entries of payment were then made in the fee book; that clerks in the office frequently saw Furman G. Cole, during the day, approach the tin box near the desk of Walter Babcock, while Babcock was sitting at his desk, nearest to the rail and to the public, and who received most of the papers, and extract therefrom papers which he, Cole, took back with him to his desk; that the fee book clerk, one F., several times had his attention called to the fact that the chief index clerk, one D., was indexing papers which had not been entered upon the fee book; that the fee book clerk spoke to the recorder about some of these papers and they were subsequently handed to him by the recorder, but that thereafter, Harry Fennimore was brought from the trans-

Statement.

cribing room by the recorder and placed at indexing work; that William G. Cole, the deputy recorder, while doing little work and coming into the office in the mornings, not earlier than ten o'clock and sometimes as late as twelve o'clock, did at times work upon the fee book, checking it up with the delivery slips; that he worked upon the day sheet, which was a separate record of cash and checks coming into the office during the day, and that he also frequently made out deposit slips and deposited the funds of the office paid by checks in the bank account of the recorder; that shortly after Furman G. Cole was elected recorder the desks of the various clerks were rearranged, a screen was put up around the desk of the recorder and a railing with gates was erected in such a way as to keep the general public from getting into that portion of the room which was occupied by the recorder and those under him; that frequent inaudible conversations took place between some or all of the accused and the recorder; and that William G. Cole seemed especially anxious that the gates should be kept closed; that lawyers making searches in the recorder's office frequently saw Babcock at work at his desk at nights, on Saturday afternoons and on Sundays, when no other clerks were at the office; that occasionally, but not frequently, the recorder himself would be at his desk at such times; that, so far as was disclosed by the evidence, the greater portion of the money of which the county was defrauded consisted of the fees paid by charter companies for the recording of charters or certificates of incorporation; that the regular custom of the office had been to send to each charter company a monthly statement or bill for all the papers left for recording by such company during the preceding month but that, during the period covered by the alleged conspiracy, each of said companies received two monthly bills, one being a statement of all the papers which had been regularly entered upon the fee book, and the other including those papers which had not been so entered, and that the fees for the latter were never turned over to the county. The state also introduced in evidence index records, to show the existence therein of entries in the handwriting of Babcock and Fennimore with respect to papers left for record which did

not appear upon the fee book, the fee book to show check marks of William G. Cole with respect to payment made for papers properly entered in the fee book, and deposit slips made by him, also the two kinds of monthly bills sent to the charter companies including other exhibits. It was also shown, with respect to conditional sales leases, for the recording of which one dollar was paid in each case at the time the paper was left for recording, that during the period covering the alleged conspiracy none of these papers, aggregating sixteen hundred in number, was entered upon the fee book, and none of the money was received by the county.

[1] Counsel for accused asked the court to instruct the jury to return a verdict of not guilty, upon the following grounds:

1. That the state failed to prove any combination of two or more persons or any of the defendants with Furman G. Cole or any other person to do either an unlawful act or a lawful act by criminal or unlawful means with unity of design and purpose, namely, a combination of said defendants with Furman G. Cole or any other person with unity of design and purpose to embezzle the sum of ten thousand dollars or any sum of money from New Castle county, state of Delaware, as alleged in the indictment.

2. That the state failed to prove that any of the defendants acted with any criminal motive or that any actual criminal or wrongful purpose accompanied any agreement made between any of the defendants and the said Furman G. Cole to do any unlawful act in an unlawful manner, to wit, to embezzle, cheat or defraud the county of New Castle, state of Delaware, of any sum of money.

3. That the individual acts which the state attempted to prove were done by one of the defendants, cannot establish the existence of a conspiracy between two or more persons, there being no evidence that either of the other defendants participated in or had knowledge thereof.

4. The state has utterly failed to prove, as alleged in the indictment, that a certain Furman G. Cole embezzled from the county of New Castle of the state of Delaware divers sums of money

amounting in the aggregate to a large sum of money, to wit, the sum of ten thousand dollars, or any part thereof, as alleged in the indictment.

The state contended that the only ground upon which the motion for binding instructions could be based, would be that there was not sufficient evidence produced by the state from which the jury could infer the existence of a conspiracy between the accused. Citing *Archbold's Criminal Practice and Pleading, page* 1841.

PENNEWILL, C. J. We decline to grant the motion for binding instructions.

The accused denied any knowledge of the existence of a conspiracy to cheat or defraud the county, and offered the evidence of Furman G. Cole, who assumed full responsibility for the scheme by which the county's money was embezzled. There was also · evidence as to the good reputation of accused for honesty, fair dealing and general observance of the law.

[2] During the progress of the trial, and before the state had rested, an article appeared in a newspaper of general circulation in New Castle county, in which it was stated that. the state had presented damaging evidence against the defendants.

Counsel for the defendants called the attention of the court to said article, whereupon the court addressed the jury as follows:

PENNEWILL, C. J. The court deem it their duty to speak to you about an article that appeared in the last Saturday morning issue of a newspaper of this city, which contained some comment on the evidence against the three defendants in this case. While it was but the expression of the opinion of the writer, it was, nevertheless, entirely improper under the circumstances, the case being in process of trial. The article referred to may not have been seen by any of you, and if it was, it may not have made any impression on your minds, prejudicial to any of the defendants. But we want to impress upon you the fact that you are not to be influenced in the slightest degree by such article, or anything else you may have seen or heard about this case, other than the testimony given from this stand. We think it unnecessary to say anything more

in this connection to gentlemen of your intelligence, fairness and integrity. But we do want to say that newspapers have no right to comment on the effect of the evidence given in a case on trial, and we hope and believe it will not be done again.

Defendant's counsel did not request the court to take any action on account of said publication, being satisfied, apparently, with calling attention to it, and leaving the court free to do whatever seemed proper under the circumstances.

[3] But in arguing their motion for a new trial, after the jury had found all the defendants guilty, one of the three grounds relied on (the other two being that the verdict was against the law, and that the verdict was against the evidence) was the newspaper article above mentioned.

It was not shown that any of the jurors had seen, read or heard of the article, but counsel insisted that the article being in a newspaper of general circulation throughout the county, it must have come to the knowledge of one or more of the jury and prejudiced the defendant's case.

The court were of the opinion that under the facts above stated, a new trial should not be granted, and the motion therefor was refused.

Against the above contention of counsel for defendants, the state cited the following cases: *Brown v. State*, 85 *Tenn.* 439, 446, 2 *S. W.* 895; *People v. Feld*, 149 *Cal.* 464, 86 *Pac.* 1100; *People v. Fong Sing*, 38 *Cal. App.* 253, 175 *Pac.* 911, 915; *United States v. McKee, Fed. Cas. No.* 15,683; *State v. Williams*, 96 *Minn.* 351, 363, 105 *N. W.* 265; *Peoples v. Lubin*, 190 *App. Div.* 339, 179 *N. Y. Supp.* 691.

PENNEWILL, C. J., charging the jury:

The defendants in this case are on trial for conspiracy. There are numerous counts in the indictment, some charging that the defendants on March 15, 1920, did unlawfully conspire, combine, confederate and agree together, and with a certain Furman G. Cole, to embezzle from New Castle county of the state of Delaware, or cheat and defraud said county of divers sums of money, amounting in the aggregate to the sum of ten thousand dollars,

31 Del.]  STATE vs. COLE ET AL  287

Opinion.

paid to and received by, or to be paid to and received by the said Furman G. Cole, recorder of deeds, or by the said Furman G. Cole, as bailee, for the use of New Castle county, he being recorder of deeds, for said county.

Other counts likewise charge the defendants with conspiring with the said Furman G. Cole, recorder of deeds, to embezzle from said county of New Castle, or cheat and defraud said county of said sum of money received by him as recorder of deeds or as bailee. And such counts also charge that on the fifteenth day of March, 1920, and down to January 11, 1921, the defendants well knowing that entries of all papers received in said office for record, and the recording fees therefor, are required by law to be made on a certain book kept in said office of Furman G. Cole, recorder of deeds as aforesaid, and known as the "Fee Book," did from time to time fraudulently procure papers so left with the said Furman G. Cole, recorder of deeds as aforesaid, to be recorded in said office without entries thereof and the recording fees therefor to be entered on the said fee book, and thereby the county of New Castle was cheated and defrauded of the sum of ten thousand dollars, or the said sum of money was embezzled from said county, etc.

[4–6] A conspiracy is the combination of two or more persons to do either an unlawful act or a lawful act by criminal or unlawful means with unity of design and purpose. The gist of the offense is the unlawful combination between the parties. No formal agreement between the parties to the conspiracy charged is necessary. It is sufficient that the minds of the parties meet understandingly so as to bring about an intelligent and deliberate agreement to do the acts and commit the offense charged. Conspiracy implies concert of design and not participation in every detail necessary to carry the general purpose or design into execution. Though the common design is the essence of the charge, it is not necessary to prove that the accused came together and actually agreed in terms to have that design and to pursue it by common means. If it be proved that the accused pursued, by their acts, the same object, often by the same means, one performing one part and another another part of the same, so as to

complete it, with a view to the attainment of the same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object.

[7, 8]    A conspiracy may be shown either by direct evidence, that is, by the admissions and declarations of the parties or co-conspirators, or by circumstantial evidence; that is, by facts and circumstances from which the existence of the conspiracy may be inferred.    Proof of a conspiracy will generally, from the nature of the case, be circumstantial.    Circumstantial evidence is where some facts being proved, another fact follows as a natural or very probable conclusion from the facts actually proved, so as readily to gain the assent of the mind from the mere probability of its having occurred.    It is the inference of a fact from other facts proved; and the fact thus inferred and assented to by the mind is said to be presumed; that is to say it is taken for granted until the contrary is proved.    And this is what is called circumstantial evidence, and it is adopted the more readily in proportion to the difficulty of proving the fact by direct evidence.    Such evidence, in order to warrant a conviction, must be sufficient  to  satisfy the jury beyond a reasonable doubt.    The rule is that where the evidence is solely circumstantial, the jury must be fully satisfied, not only that the circumstances are consistent with the accused having committed the act or acts charged as constituting the crime but they must also be fully satisfied that the facts shown by such evidence are such as to be inconsistent with any other rational con-clusion than that the accused was the party who committed the act complained of.    The facts established by such evidence must be such as to exclude any other reasonable hypothesis or conclusion.    *State v. Stielger et al.*, 7 *Boyce*, 236, 105 *Atl.* 667.

Such are the general principles respecting conspiracy that are well settled, and that have been fully recognized by the courts of this state.

A conspiracy is proved when the jury is convinced by the evidence beyond a reasonable doubt that two or more persons did combine and agree together to do the unlawful act charged against them.

[9, 10] In order to constitute a conspiracy there must be a combination to do an unlawful act by at least two persons in furtherance of a common design, that is, the same design or purpose must be in the minds of at least two conspirators. A common design is the essence of the charge. A conspiracy may be formed and a party not be in it at the time of its formation, but may afterwards come in and be connected with the conspiracy, and in such case he is as guilty as he would be if he were in the first stage thereof, for he is deemed in law a party to all acts done by any other parties, either before or after, in furtherance of the common design.

[11–13] While it is necessary for the state to show that the defendants had guilty knowledge, it is not required to show that guilty knowledge was imparted to all defendants at one and the same time, or by one and the same means. It is sufficient to show that each of the conspirators had guilty knowledge. If a person, understanding the unlawful character of a transaction, assists in the prosecution thereof in any manner with a view to forwarding the common purpose or scheme, he becomes a conspirator. And while a combination or agreement to do an unlawful act must be shown, it is not necessary that the act should be actually done, or if done that a party to the agreement profited thereby.

[14] Evidence of good character is to be taken and considered by the jury in connection with all the other evidence in the case, and given such weight as in their judgment it is entitled to.

As we have said, it is necessary, to constitute a conspiracy, that at least two persons shall conspire; that there shall be an agreement, combination or confederation; that there shall be a common design, and that there shall be a purpose or design to do an unlawful act, or to do a lawful act by an unlawful means.

These are essential elements of conspiracy, and in order to convict the defendants it is necessary for the state to prove the existence of each of them beyond a reasonable doubt.

[15, 16] In conclusion, gentlemen, we say that in this, as in every criminal case, the defendant is presumed to be innocent until his guilt is proved to the satisfaction of the jury beyond a

reasonable doubt. If, therefore, after careful considering all the evidence you shall have a reasonable doubt of the guilt of the prisoners, or any of them, such doubt will inure to the benefit of any or all as to whom you may entertain such doubt, and as to such defendant or defendants your verdict should be not guilty. But it is our duty to instruct you that by reasonable doubt is meant not a speculative, or mere possible doubt, but a real, substantial doubt, and such as remains in the minds of the jury after a careful and conscientious consideration of all the evidence.

There being three defendants in the case the jury may find any one of several verdicts, according as the evidence shall in their judgment warrant. They may find a verdict of guilty as to all the defendants, they may find a verdict of guilty as to two and not guilty as to one, they may find a verdict of guilty as to one and not guilty as to two, or they may find a verdict of not guilty as to all three.

Verdicts, guilty.

[17] NOTE.—On the morning of the second day of the trial, the court was informed that Furman G. Cole, a convict in custody of the trustees of the New Castle County Workhouse, was in court without having been brought in on habeas corpus ad testificandum, or by order of the court. At the conclusion of the case, and after the jury had retired to their room for deliberation, the court made the following announcement:

Referring to Furman G. Cole's presence here, and the manner in which he was brought here, the court want to say that the proper procedure for bringing a prisoner from the workhouse to testify in this court is an application to the court made for that purpose, and such must be the procedure in the future.