**Javon J. LEMONS, Defendant–Below, Appellant,**

v.

**STATE of Delaware, Plaintiff–Below, Appellee.**

**No. 270, 2010.**

Supreme Court of Delaware.

Submitted: Sept. 28, 2011.

Decided: Nov. 17, 2011.

**35.** *Id.*

**36.** *Id.* at *3.

**37.** *Restatement* § 6, cmt. d.

Jan A.T. van Amerongen, Jr., Esquire, Wilmington, Delaware; for Appellant.

Paul Wallace, Esquire (argued), and Danielle J. Brennan, Esquire, Department of Justice, Wilmington, Delaware; for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

JACOBS, Justice:

A Superior Court jury found Javon Lemons ("Lemons") guilty of Conspiracy to Commit First–Degree Murder, but acquitted him of charges of First–Degree Murder and Possession of a Firearm During the Commission of a Felony. Lemons appeals from the Conspiracy conviction. On appeal, Lemons claims that the Superior Court erred by denying his motion for a judgment of acquittal because the evidence was legally insufficient to support a finding that Lemons conspired to kill Michael Anderson. We find no error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 24, 2009, Michael Anderson was shot and killed by a single bullet to the neck on Van Buren Street in Wilmington. His body was found shortly afterward by police officers responding to reports of gunshots in the neighborhood. By then the shooter had already fled the scene. During the ensuing investigation, the police located witnesses who described an earlier encounter between the victim (Anderson) and a group of persons gathered nearby. The details of that incident are disputed, but witnesses described either a "bump" or a "look" that Anderson, the victim, had given to either Jamil Biddle or to Eric Branch.

Jerome Owens, Anderson's best friend and a witness for the prosecution, testified that Anderson inadvertently bumped Biddle, that Branch was not part of the group, that Biddle and Lemons then came looking for Anderson, and that Lemons shot Anderson. The trial judge, however, later ruled that the evidence established that Anderson had bumped into Branch, not Biddle. As Biddle himself testified, Branch told him (Biddle) that Anderson bumped into him (Branch), and thereafter, Branch shot Anderson. Other witnesses placed Branch at the scene of the encounter as part of a group that included Lemons, Biddle, and two women, Tashay Briscoe and Tureka Watson.

Both Briscoe and Watson provided key statements to the police regarding the circumstances of this exchange and Lemons' later actions. In her statement, Watson told the police that she overheard Branch complaining to Lemons about Anderson's stare. At trial Ms. Watson testified that she later saw Branch display a gun, which he then put back into his pocket. Ms. Briscoe testified that Branch told Lemons that Anderson had stared at him (Branch);

and that Branch later displayed a handgun which he first put back in his pocket, and thereafter handed to Lemons. Both Briscoe and Watson testified that Branch and Lemons then walked off together in pursuit of Anderson. Also introduced into evidence were Briscoe's statements to police, which included her recollection that Lemons encouraged Branch to pursue the victim by telling Branch to "come on" before they began pursuing Anderson.

The State charged Lemons as the shooter,[1] but the trial testimony on the shooter's identity was in sharp conflict. Shaquille Washington testified that although he did not see Lemons pull the trigger, he was with Lemons and Branch when Anderson was shot. Washington testified that based on where Lemons and Branch were standing, Lemons was the only one who could have shot Anderson. But Biddle, who testified for the defense, stated that Branch told him (Biddle) that he (Branch) had shot the victim in retaliation.

Confronted with this conflicting testimony about who was the shooter, the jury acquitted Lemons of First–Degree Murder and Possession of a Firearm During the Commission of a Felony. The jury convicted Lemons, however, of Conspiracy to Commit First–Degree Murder. Lemons moved for a judgment of acquittal on the ground that the jury's verdict was not supported by legally sufficient evidence. The trial court denied the motion, ruling that "[a]lthough there seems to be no direct evidence that Defendant and Mr. Branch made a formal agreement to murder Mr. Anderson, there is certainly sufficient circumstantial evidence for a jury to infer that Mr. Branch and Defendant discussed retaliating against Mr. Anderson, that Defendant knew of the criminal objective from the presence of the firearm, and that Defendant agreed to aid Mr. Branch when the two set off in pursuit of Mr. Anderson."

This appeal followed.

### *ANALYSIS*

■ On appeal, Lemons claims that the Superior Court erred by denying his motion for a judgment of acquittal, because: (i) the trial evidence was insufficient to support an agreement between Branch and Lemons to retaliate against Anderson, and (ii) even if the evidence supported an agreement between Branch and Lemons to retaliate, it did not establish that they agreed to kill Anderson. This Court reviews *de novo* a claim that a conviction was based on legally insufficient evidence.[2]

The trial court concluded that witness testimony evidencing the following facts was legally sufficient for a conviction of Conspiracy to Commit First–Degree Murder. Specifically, Lemons (i) encouraged Branch to retaliate, (ii) knew of Branch's plans to kill Anderson from the "presence of the firearm," and (iii) walked off with Branch in pursuit of Anderson. The issue is whether that conclusion is legally erroneous. We find that it is not.

■ The focus of our inquiry is whether, viewing the evidence in the light most favorable to the State, a rational juror could find that the charge of Conspiracy to Commit First–Degree Murder was proved beyond a reasonable doubt.[3] We do not substitute our judgment for that of the jury on issues involving witness

---

1. Branch and Lemons faced identical charges. Branch pled guilty to a single charge of manslaughter on May 19, 2010 and received an eight-year sentence.

2. *Carter v. State*, 933 A.2d 774, 777 (Del. 2007).

3. *Id.; Poon v. State*, 880 A.2d 236, 238 (Del. 2005).

credibility or conflicting testimony,[4] nor do we distinguish between direct and circumstantial evidence in making our determination.[5] The jury, as fact finder, may reject a witness' testimony in whole or in part, whether or not that testimony is controverted.[6] The jury may also draw rational inferences from proven facts, or it may decline to do so.[7] Evidence that is insufficient to support a conviction warrants reversal, but the mere fact that the evidence is in conflict does not.

■ To prove a conspiracy under 11 *Del. C.* § 513, the State must show: (i) an agreement between two or more persons to engage in felonious conduct, or (ii) an agreement to aid or abet another person in the planning or commission of a felony *and* "an overt act in pursuance of the conspiracy" committed by one of the parties to the agreement. The underlying crime must be a Class A felony. On this appeal, only the first element—the agreement—is before us.[8] As the trial court stated, there is "no requirement that the agreement between parties to a conspiracy be formal or memorialized.... If a person, understanding the unlawful character of a transaction, assists ... with a view to forwarding the ... scheme, he becomes a conspirator."

First-degree murder, which is the underlying Class A felony in this case, is defined in 11 *Del. C.* § 636(a)(1) as occurring where a "person intentionally causes the death of another person." The State's burden was to prove beyond a reasonable

doubt that Lemons either agreed with Branch to kill Anderson or agreed to aid Branch in doing so.

On appeal, Lemons claims that there is no legally sufficient evidence of any agreement, let alone an agreement to kill the victim. Lemons argues that the evidence does not establish that he and Branch agreed to retaliate for Anderson's "look" or "bump." Alternatively, he claims that the State did not prove beyond a reasonable doubt that their agreement was to retaliate *by killing* Anderson. It is undisputed, and the trial court acknowledged, that the State's proof of an agreement between Branch and Lemons to kill Anderson rests entirely on circumstantial evidence.

■ Circumstantial evidence is any evidence that is not direct evidence. Stated differently, evidence is circumstantial "where some facts [are] proved [and] another fact follows as a natural or very probable conclusion from the facts actually proved."[9] Conspiracy is a crime long recognized as dependent on circumstantial evidence for proof that it occurred. As the United States Supreme Court has explained, "[s]ecrecy and concealment are essential features of successful conspiracy.... Hence the law rightly gives room for allowing the conviction of those discovered upon showing sufficiently the *essential nature of the plan and their connections with it....*"[10] Delaware courts have

---

4. *Poon*, 880 A.2d at 238.

5. *Id.*

6. *Id.*

7. *Id.*

8. In his opening brief on appeal, Lemons does not dispute that an overt act occurred. We therefore do not address the overt act requirement in this Opinion.

9. *State v. Cole*, 114 A. 201, 204 (Del.Ct.Gen. Sess.1921). *See also*, 29A Am.Jur.2d Evidence § 1361 (Defining circumstantial evidence as "evidence of one fact, or of a set of facts, from which the existence of the fact to be determined may reasonably be inferred").

10. *Blumenthal v. U.S.*, 332 U.S. 539, 557, 68 S.Ct. 248, 92 L.Ed. 154 (1947) (emphasis added).

long recognized this reality as well.[11]

### Evidence Of An Agreement To Retaliate

■ The first issue is whether the evidence is sufficient to support a jury finding of an agreement to retaliate against Anderson. We conclude that it is. Witness testimony established that Branch and Lemons agreed to retaliate for either an offensive bump or a look, or both, by Anderson. Witnesses Briscoe and Watson both recalled Lemons and Branch discussing a perceived slight from Anderson. Briscoe told the police that Lemons encouraged Branch to retaliate by telling him to "come on," after which Branch handed Lemons a gun. A rational juror could reasonably infer from that sequence of events that Lemons and Branch agreed to retaliate against Anderson.

Relying on our decision in *White v. State,*[12] Lemons argues that a person's mere presence and knowledge of another's criminal activities, without more, is insufficient to support a conspiracy conviction. But, *White* does not help Lemons. There, the police raided a home on suspicion of drug trafficking. The defendant, while staying at the residence temporarily, was arrested in the sweep. She was found with a small quantity of drugs on her person, but those drugs were of a color different from other drugs found in much larger quantities inside the home. This Court held that the defendant's presence in the home and her alleged knowledge that other members of the household were " 'cooking' untested white residue in a pot found in the sink," were not enough to support a jury finding, beyond a reasonable doubt, that the defendant had agreed to assist in the drug operation.

In *McRae v. State,*[13] however, we held that a defendant's "frequent presence" at a drug trafficking location, combined with his "interaction with others who were selling cocaine from the address" and "his possession of the key to the vacant apartment where the cocaine was stored" were sufficient circumstantial evidence to support a conspiracy conviction. The facts and evidence in this case are far closer to *McRae* than to *White.*

Here, unlike *White,* there was more than tenuous circumstantial evidence to prove an agreement to retaliate. The evidence shows that Lemons was present throughout, knew of Branch's intent to retaliate, and knew that Branch possessed a deadly weapon. In addition, Lemons encouraged Branch to retaliate. Lemons' mere presence with Branch at the time of the killing was the result of his *active* participation in searching for the victim. His presence was not (as in *White* ) a *passive* happenstance consequence of the defendant being at that particular place at that particular time.

### Evidence Of An Agreement To Kill

■ Lemons next argues, in the alternative, that even if the evidence was sufficient to establish that Lemons and Branch agreed to retaliate, that, without more, is inadequate to support the jury finding that the agreed manner of retaliation was to kill the victim. The trial court concluded otherwise, citing the testimony of multiple witnesses that Lemons knew that Branch possessed a deadly weapon.

The testimony was in conflict over whether Branch handed Lemons a gun, or

---

11. *Cole,* 114 A. at 204 ("Proof of conspiracy will generally, from the nature of the case, be circumstantial."). *See also, Blodgett v. State,* 310 A.2d 628, 630 (Del.1973) (citing *Cole,* 114 A. at 204).

12. 906 A.2d 82 (Del.2006).

13. 676 A.2d 905 (Del.1996).

whether Branch simply brandished the gun in Lemons' presence. That conflict *may* account, at least in part, for why Lemons was acquitted of the weapons possession charge, and possibly of First–Degree Murder as well. Even so, the witnesses' testimony is sufficient to establish, and support a jury finding, that Lemons knew that Branch had a gun, and that Branch intended the gun to be used to retaliate against Anderson.

Precisely which evidence the jury accepted in reaching its verdict is unknowable. The jury may have credited Briscoe's statement to the police that Lemons encouraged Branch, but not her testimony that Branch passed the gun to Lemons. Or, the jury may have accepted Briscoe's testimony that Branch handed Lemons the gun, yet found her testimony insufficient to prove beyond a reasonable doubt that Lemons was holding the gun at the time of the shooting. In all events, the testimony does indicate that Branch displayed a gun after discussing with Lemons the perceived slight by Anderson, and after Lemons had encouraged Branch to retaliate. A rational juror could have found that Branch's display of the gun amounted to an expression of his intent to use the gun on Anderson in response to the slight. A rational juror could also have found that Lemons' knowledge of the gun, plus his having joined Branch in pursuing Anderson, confirmed Lemons' agreement with Branch to retaliate with deadly effect.

As the United States Supreme Court has held, appropriate inferences from circumstantial evidence of conspiracy are "varying with the conditions under which the crime may be committed." [14] This Court has previously recognized that coordinated action among co-conspirators is evidence of an agreement. In *Bender v. State*,[15] three defendants were charged with conspiracy to commit robbery after they chased the victim, at least two defendants held the victim, and one defendant took the victim's money.[16] Despite the absence of direct evidence of either a prior agreement among all three or direct evidence that all three participated in the robbery itself, we affirmed the conviction. We also credited the State's argument that "the presence of the three defendants on the scene and their *concerted action* in committing the crime justify the conclusion that they had agreed among themselves." [17]

"Coordination between conspirators is strong circumstantial proof of agreement; as the degree of coordination between conspirators rises, the likelihood that their actions were driven by an agreement increases." [18] In this case, proof of a high degree of coordinated criminal activity between Lemons and Branch, aimed at retaliating against Anderson, increased both the likelihood and the reasonableness of the inference that the retaliatory conduct (including the murderous act) was the product of an agreement. Considerable "concerted action" between Branch and Lemons was proved at trial: the two discussed Anderson's gesture of disrespect, Lemons encouraged Branch to retaliate, Branch displayed the gun to Lemons in response, and shortly thereafter the two left together to find the victim.

The nature of Anderson's murder further supports a finding of a conspiracy to kill Anderson. The specific factual circumstances of a killing are commonly credited

---

**14.** *Direct Sales Co. v. U.S.*, 319 U.S. 703, 714, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943).

**15.** 253 A.2d 686 (Del.1969).

**16.** *Id.*

**17.** *Id.* at 687 (emphasis added).

**18.** *U.S. v. Iriarte–Ortega*, 113 F.3d 1022, 1024 (9th Cir.1997).

as evidence of intent (or lack thereof) on the part of the accused killer.[19]  Anderson was killed by a single bullet to the neck, just below the head.  There was no evidence of a struggle, or an accident, or any other mitigating circumstance surrounding his death.  Even if a rational juror believed that reasonable doubt existed as to who the shooter was (either Lemons or Branch), that juror could have inferred from the manner of the homicide that the shooter *intended* to kill the victim and even planned the killing beforehand.  A rational juror could have also inferred that intentional homicide was the objective of the agreement.  The alternative explanation for such behavior—that Branch intended to kill Anderson but hid this specific intent from Lemons—is too implausible to create a reasonable doubt in the mind of a rational juror that Branch and Lemons agreed to kill Anderson.

In summary, a rational juror could infer from the evidence that Lemons wanted Branch to retaliate, that he knew Branch intended to use a deadly weapon to accomplish that retaliation, and that the shooter (whether Lemons or Branch) carried out the plan exactly as intended.  Given those reasonable inferences from the evidence introduced at trial, a rational juror could have also concluded beyond a reasonable doubt that Lemons conspired to commit First–Degree Murder.

### CONCLUSION

For the above reasons, the judgment of the Superior Court is affirmed.

---

19.  *See, e.g., Plass v. State*, 457 A.2d 362, 365 (Del.1983) ("As a matter of common sense, in judging the sufficiency of the evidence as to state of mind, the jury must be able to weigh the conduct of the defendant.").  *See also*

*Longoria v. State*, 53 Del. 311, 329, 168 A.2d 695 (Del.1961) ("The formed design to kill or to do great bodily harm was inferable from the intentional use of a deadly weapon.").