IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      )
                            )
     v.              )    ID. No. 2109010261
                            )
KHALIL DIXON,         )
                            )
    Defendant.    )

Submitted:  July 8, 2022
Decided:  July 20, 2022

## **ORDER**

**AND NOW TO WIT**, this 20th day of July of 2022, the Court having duly considered Defendant's Motion for Judgment of Acquittal, the State's Response in Opposition, and the record in this case, **IT IS HEREBY ORDERED** that Defendant's Motion is **DENIED** for the following reasons:

1.      On September 27, 2021, Khalil Dixon ("Defendant") was indicted by a Grand Jury for Murder First Degree, Conspiracy First Degree, Criminal Solicitation First Degree, Conspiracy Second Degree, and Money Laundering.[1]  On June 8, 2022, following a three-week trial with co-defendant, Jason Calhum, the jury returned its verdict finding Defendant guilty on all counts.[2]

---

[1] Indictment, True Bill Filed No. 72, D.I. 1.
[2] Jury Verdict Sheet Signed, D.I. 41.

2. The State's theory in this case was that Defendant initiated a contract killing. The State presented evidence that Defendant solicited members of the M-Block Grimy Savages gang ("MGS") to murder Shiheem Durham ("Durham") and two other persons in retaliation for the murder of Defendant's friend.[3] The jury heard evidence that four individuals, including MGS gang member Tyrie Burton ("Burton"), traveled to Dover on February 25, 2020, when Durham was shot in the head while sitting in the passenger seat of a vehicle.

3. The State introduced phone calls, as well as text messages, and social media messages between Defendant and Burton.[4] The State also provided cell tower record evidence placing Defendant and the other indicted co-conspirators at the same location shortly after the murder of Durham.[5]

4. Burton testified on behalf of the State pursuant to a cooperation agreement regarding his communications with Defendant and his participation in the murder-for-hire scheme.[6] He testified that Defendant was offering $5,000 ("a nickel") per killing, which was corroborated through various communications with Defendant.[7] Burton also testified how he and two other individuals worked together

---

[3] State's Response to Defendant's Motion for Judgment of Acquittal, D.I. 59, at 1–2 [hereinafter State's Response].
[4] *Id.*
[5] *Id.* at 2–3.
[6] *See id.* at 3; Defendant Dixon's Motion for Judgment of Acquittal, D.I. 58, ¶ 3 [hereinafter Defendant's Motion].
[7] The State offered evidence Defendant communicated to Burton via social media messages, including Defendant stating: "I need somebody who ain't gon play cash dis check" for "[p]rolly a

to commit the murder and collect payment from Defendant.[8] On cross-examination, Burton gave conflicting testimony about how much money Defendant offered for the murder.[9]

5.  On the basis of the conflicting testimony of Burton, Defendant filed this pending Motion for Judgment of Acquittal on July 1, 2022.[10] The State filed its response on July 8, 2022. The parties declined to present oral arguments. This matter is now ripe for decision.

## Party Contentions

6.  Defendant argues the State failed to establish a "settled agreement" among himself and his alleged co-conspirators because the testimony varied as to the price for the murder.[11] He further claims that "because a material term of the agreement was lacking, namely, the price to be paid for the murder" then "there could be no valid agreement," a required element of Conspiracy First Degree.[12] The

---

nickel," an amount he confirmed two days later. *See* State's Response, at 2. Call detail records also showed multiple calls between Burton and another alleged co-conspirator, Deonte Robinson, on the day of the murder. *See id.* at 2–3.

[8] *Id.* at 3.

[9] *Id.*; Defendant's Motion, ¶ 3. Burton's testimony provided an amount which varied from $5,000 to $10,000.

[10] The Court granted Defendant an extension of the time to file. *See* Letter from the Court, D.I. 57.

[11] *See generally* Defendant's Motion.

[12] *Id.* ¶ 5.

only authority provided in support of Defendant's position is *Lemons v. State*,[13] which he argues is "somewhat analogous" to the present matter.[14]

7.    The State contends the evidence presented at trial is sufficient to support Defendant's convictions.[15] It argues that the necessary evidence—direct and circumstantial—was presented at trial to establish Defendant's involvement in the conspiracy[16] and that the authority in *Lemons* serves to support the State's position.[17]

### Standard of Review

8.    A motion for judgment of acquittal arises under Rule 29.[18] When reviewing a motion for judgment of acquittal, the Court must consider "whether any rational trier of fact, after considering the evidence in the light most favorable to the State, could have found the essential elements of the crime beyond a reasonable doubt."[19] "Evidence that is insufficient to support a conviction warrants reversal, but the mere fact that the evidence is in conflict does not."[20] Upon consideration of

---

[13] 32 A.3d 358 (Del. 2011).
[14] Defendant's Motion, ¶ 6.
[15] *See generally* State's Response.
[16] *Id.* at 6.
[17] *Id.* at 5–6.
[18] Super. Ct. Crim. R. 29.  A defendant has seven days from a guilty verdict to move for judgment of acquittal.
[19] *Bethard v. State*, 28 A.3d 395, 397–98 (Del. 2011).
[20] *Lemons*, 32 A.3d at 362.

a motion for judgment of acquittal, the evidence and all reasonable inferences are considered in the light most favorable to the State.[21]

**Discussion**

9. Under 11 *Del. C.* § 513, the elements to establish the crime of Conspiracy First Degree are clear.[22] In interpreting the statute, Delaware courts have not required any material terms, as suggested by Defendant.[23] He is correct to cite to *Lemons v. State* but is incorrect that this authority requires the State to introduce evidence of a finite price in the murder-for-hire agreement between his co-conspirators.

10. In *Lemons,* our Supreme Court established that Conspiracy First Degree requires the State to prove:

> (1) an agreement between two or more persons to engage in felonious conduct,[24] or (2) an agreement to aid or abet another person in the planning or commission of a felony *and* 'an overt act in pursuance of the conspiracy' committed by one of the parties to the agreement."[25]

---

[21] *See State v. Biter*, 119 A.2d 894, 898 (Del. Super. 1955); *State v. Wright*, 2014 WL 4088685, at *3 (Del. Super. Aug. 19, 2014).

[22] "A person is guilty of conspiracy in the first degree when, intending to promote or facilitate the commission of a class A felony, the person:
(1) Agrees with another person or persons that they or 1 or more of them will engage in conduct constituting the felony or an attempt or solicitation to commit the felony; or
(2) Agrees to aid another person or persons in the planning or commission of the felony or an attempt or solicitation to commit the felony, and the person or another person with whom the person conspired commits an overt act in pursuance of the conspiracy." 11 *Del. C.* § 513.

[23] Except for his reference to *Lemons v. State* as "somewhat analogous," no legal authority in support of Defendant's position was provided and none was found by this Court.

[24] Specifically, a class A felony.

[25] *Lemons*, 32 A.3d at 362.

5

11.     Moreover, "there is 'no requirement that the agreement between parties to a conspiracy be formal or memorialized . . . . If a person, understanding the unlawful character of a transaction, assists . . . with a view to forwarding the . . . scheme, he becomes a conspirator.'"[26]  As such, to establish an agreement here the State only needed "to show that each of the conspirators had guilty knowledge."[27]

12.     As outlined, the State provided sufficient evidence through various messaging platforms, cell phone communications, cell tower records, and witness testimony that Defendant initiated and participated in the conspiracy by offering payment for murder.  Neither the law nor *Lemons* requires the State prove "a material term of the agreement"—the price to be paid for a murder—to satisfy Conspiracy First Degree under § 513.  And *Lemons* actually supports the State's position that the provided evidence was sufficient to obtain the conviction.

13.     While true that Burton equivocated regarding the price offered by Defendant—where Burton testified to various ranges including $5,000 to $10,000— the discrepancy matters not.  Any credibility determinations or conflicting testimony is for the jury to consider as it deems appropriate.[28]  Viewed in the light most favorable to the State, sufficient evidence was introduced from which a rational juror

---

[26] *Id.* (quoting *State v. Lemons*, 2010 WL 1175200, *3 (Del. Super. Mar. 29, 2010)).
[27] *Lemons*, 2010 WL 1175200, *3 (citing *Biter*, 119 A.2d at 898).
[28] *See Lemons*, 32 A.3d at 361–62 (citing *Poon v. State*, 880 A.2d 236, 238 (Del. 2005)).

could find Defendant committed Conspiracy First Degree beyond a reasonable doubt.[29]

**Conclusion**

For the reasons stated above, the Court finds that considering all reasonable inferences in the light most favorable to the State, sufficient evidence exists to support Defendant's convictions.  Therefore, Defendant's Motion for Judgment of Acquittal is **DENIED**.

**IT IS SO ORDERED.**

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge

cc:    James K. McCloskey, DAG
Erika R. Flaschner, DAG
Anthony J. Hill, DAG
James J. Haley, Esq.
Prothonotary

---

[29] Although not raised by Defendant and not required in this ruling, the Court finds that the State offered sufficient evidence of the remaining elements of Conspiracy First Degree to satisfy his conviction.