**Ernest L. BROOKINS, Defendant below, Appellant,**

v.

**STATE of Delaware, Plaintiff below, Appellee.**

Supreme Court of Delaware.

Submitted Oct. 17, 1975.

Decided March 9, 1976.

Richard S. Gebelein, Asst. Public Defender, Wilmington, for defendant below, appellant.

James S. Green and Edward C. Pankowski, Jr., Deputy Attys. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, Chief Justice, and DUFFY and McNEILLY, Justices.

DUFFY, Justice:

Defendant appeals from a conviction for robbery in the second degree on several grounds, the most significant of which involves references to "mug shots" during the course of the trial. As used herein, the term means police photographs.[1]

I.

The use of police photographs at trial risks suggesting to the jury that defendant

1. Mug shot: "a photograph of a person's face—usu. used of official police photo- graphs." *Webster's Third New International Dictionary*.

has a prior criminal record. While our trial procedure is based on the premise that the jury will follow instructions and decide a case only on the pertinent evidence, it is eesential that jurors be insulated as much as possible from the irrelevant, particularly as to matters so prejudicial as a prior criminal record. *Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). Our system of justice is single and it functions the same for both a first and a many-times defendant in a criminal prosecution. To help make that ideal meaningful in a courtroom, the law generally circumscribes the condition under which the jury may be informed of a defendant's prior record.[2] Cf. *Michelson v. United States,* supra.

The only reported Delaware opinion discussing the use of a "mug shot" at trial is *State v. Boyd,* Del.Super., 8 Terry 370, 47 Del. 370, 91 A.2d 471 (1952). There the Court considered a motion for a new trial on the basis of testimony by a police officer that the prosecuting witness had identified what was implicitly a "mug shot"-type of photograph; in a close factual case the testimony was deemed to be so prejudicial that the guilty verdict was set aside and a new trial was ordered. While that ruling is not dispositive of this case, it does demonstrate the care with which a Trial Court must examine any use before the jury of "mug shot"-type of photographs.

In *United States v. Harrington,* 2 Cir., 490 F.2d 487 (1973), the Court (one Judge dissenting) discussed the use of police photographs at trial and said this:

"If, at his trial, a defendant does not take the witness stand in his own defense, and if he has not himself been responsible for causing the jury to be informed about his previous convictions, he is entitled to have the existence of any prior criminal record concealed from the jury. . . . That the introduction of photographs of a defendant may well be equivalent to the introduction of direct evidence of a prior criminal conviction has been articulated in a number of recent opinions which have recognized that the introduction of certain photographs may result in getting before the jury the fact that the defendant has a prior record, and so has deprived the defendant of his right to a fair trial."

█ The Court then announced three prerequisites to the admission into evidence of mug shot-type photographs": (1) the prosecution must show a demonstrable need to introduce the photographs; and (2) the photographs, if shown to the jury, must not imply that defendant has a prior criminal record; and (3) the introduction at trial does not draw particular attention to the source or implications of the photographs.

We are in accord with this standard and we adopt it for application in the Courts of this State.[3]

## II.

█ We turn now to the record in this case, which includes some four references to "mug shots" by the prosecution.

In his opening statement to the jury the Deputy Attorney General said:

"We will present the testimony of Detective Edward Head of the Wilmington

---

2. 10 Del.C. § 4303 which permits the introduction of evidence of a felony conviction to "affect-credibility" applies to a defendant only if he testifies. See *Martin v. State,* Del.Supr., 346 A.2d 158 (1975).

3. Compare *United States v. Gimelstob,* 3 Cir., 475 F.2d 157 (1973) (applying a "balancing test") ; *United States v. Reed,* 7 Cir.,

376 F.2d 226 (1967) (where the testimony referred to "pictures from the prison") ; *Barnes v. United States,* 124 U.S.App.D.C. 318, 365 F.2d 509 (1966) (involving the classic front and profile—"wanted"—views) ; *United States v. Harman,* 4 Cir., 349 F.2d 316 (1965) (in which the prosecution deliberately introduced full face and profile photographs showing a prison number).

Bureau of Police, who will describe to you his investigative procedures, what they led him to do, how the crime evolved to him, the steps he took; namely, interview witnesses or possible witnesses, take statements from witnesses and the fact that he took the witnesses that he spoke with to the Wilmington Police headquarters and showed them what are called 'mug books,' showed them photographs; indeed, showed them very many photographs."

The State's first witness was Detective Head who testified on direct examination that two eyewitnesses (Albert Sudler and Madeline Gaither) were interviewed at police headquarters and then

"After the interview Mr. Sudler was allowed to view the robbery squad mug books. I questioned him first whether or not he thought he could identify. He stated he was pretty sure he could identify the subject."

The Trial Judge immediately recognized the possible prejudicial nature of that testimony and interrupted it, as the record shows.

"(The jury left the courtroom.)

THE COURT: Officer, I want to alert you that one of the primary objectives of the trial is to get the jury in a frame of mind where they have no prejudices or biases against the defendant. During the course of your testimony I feel there may be the occasion when you could refer to the defendant's prior criminal record, if he has one. I want to alert you to the fact that you should not refer in any way, directly or indirectly, to his prior criminal record, as that could lead to some probability of—

THE WITNESS: I have no intention of doing that, your Honor.

THE COURT: I know you didn't, and this is only a cautionary—I wanted to take the time to caution you not to do it because too much is invested in the trial already.

With regard to even the reference to 'mug shots,' I think that may not be necessary. Just talk about 'photographs.'"

Thereafter, Mr. Sudler was asked on direct examination if he had viewed "some photographs" and he responded by saying that he "went through some mug shots." Following an objection, the Court immediately instructed the witnesses as follows:

"We wanted to stop you at this stage because you are getting onto a dangerous area and we want you to be most careful in the use of your words. I do not want you to use 'mug shot' again. And don't refer to them as 'police pictures' or anything like that which would infer that this man had a previous criminal record. Okay?

Now we can have the jury."

The second eyewitness, Mrs. Gaither, also testified for the State and on direct examination said that she had examined a "lot of" photographs "in books" in one of which she identified defendant.

This is the sum of all trial references and, tested by the rule announced herein, we are satisfied that there was no reversible error.

First, as to need, defendant relied on an alibi and in his opening statement (before receipt of any evidence) defendant's counsel told the jury that

"Mr. Brookins will testify that he was at someone else's house when this alleged robbery occurred and that the identification made by the individuals involved is improper, incorrect; that they identified him incorrectly or that someone else is involved."

Thus, in view of the challenge to the identification, evidence as to the photographs was properly admitted.

Second, as to the photograph of defendant which was admitted, it is a front view, civilian dress, half-body and full face, color Polaroid-type without any direct or in-

direct reference to a prior criminal activity or record.

Third, as to the source or implication of the photograph, we find nothing "particular" which violates the standard. Showing photographs to victims and witnesses is a routine part of police investigation and nothing more than that was done here.

In sum, we do not approve the references by the State Prosecutor and witnesses but, under the circumstances, they do not, singly or cumulatively, amount to reversible error. Compare *United States v. Robinson*, 7 Cir., 406 F.2d 64 (1969); *United States v. Dichiarinte*, 7 Cir., 385 F.2d 333 (1967). And given the strong and positive in-court identification of defendant by the two eyewitnesses any error was harmless beyond a reasonable doubt.[4] *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 8241, 17 L.Ed.2d 1705 (1967); *Outlaw v. State*, Del.Supr., 327 A.2d 606 (1974).

■ Finally, as to the photographs we note that the State, apparently relying on *Taylor v. State*, Del.Supr., 298 A.2d 332 (1972), elicited on direct examination from each eyewitness an in-court identification of defendant after prior testimony about the review of police photographs. That practice is permissible but the State is not obligated to follow it. Indeed, we think that the better practice is to proceed with an in-court identification without reference to a photographic review during the prosecution's affirmative case. If there is an attack upon the identification, then rebuttal testimony about the photographic review would be appropriate to support the in-court identification. Such a procedure was apparently followed in *Taylor*.

■ Defendant argues also that there was reversible error in the proceeding below because he was exposed to the jury panel while in handcuffs.

We note and approve the long honored practice in Delaware of exhibiting a defendant to the trial jury or panel only when he is out of handcuffs. That is in accord with Common Law dating back to 1678. *Commonwealth v. Cruz*, Pa.Super., 226 Pa.Super. 241, 311 A.2d 691 (1973).[5]

In this case defendant was brought into a position "just off the jury room" where he was seen by the panel through an open door while handcuffs were being removed. There is no suggestion that the incident was intentional and no prejudice has been shown.[6]

As the Court observed in *United States v. Leach*, 8 Cir., 429 F.2d 956 (1970):

"... It is a normal and regular as well as a highly desirable and necessary practice to handcuff prisoners when they are being taken from one place to another, and the jury is aware of this. This is necessary to prevent an escape and possible injury to others in an escape attempt."

Indeed, it is generally held that there is no reversible error if members of the jury view a defendant in handcuffs when he is in custody outside the courtroom itself or while he is being transferred to and from the courtroom. *State v. Sawyer*, 60

---

4. After detailed testimony about the events and an opportunity to observe defendant, Mr. Sudler was asked on cross-examination:

"Q Is there no doubt in your mind because you remember the picture you picked out or because you remember him as being the person, the actual person who was in the theatre?

"A I remember him as the actual person behind the candy stand."

Mrs. Gaither was equally specific and certain.

5. 2, Hale's *Pleas of the Crown*, 219 (1678), quoted in *Cruz*, states:

"... 'The prisoner, tho under indictment of the highest crime, must be brought to the bar without irons, and all matter of shackles or bonds ... unless there be danger of escape ....'"

6. We take the occasion, however, to call for maximum care so that inadvertent exposure of a handcuffed defendant to a jury panel will be minimized.

Wash.2d 83, 371 P.2d 932 (1962); *United States v. Rickus,* E.D.Pa., 351 F.Supp. 1386 (1972). There was no error in this case.

## IV.

Next, defendant argues that he was denied his right to a speedy trial, but he did not raise that issue until after the trial jury was sworn and did not make an evidentiary record to support the motion. Indeed, the pertinent record consists of no more than an oral motion and a brief argument by counsel. Consequently, there is an inadequate record basis on which to apply the constitutional tests, *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); cf. *Kominski v. State,* Del. Supr., 1 Storey 163, 51 Del. 163, 141 A.2d 138 (1958); compare *Preston v. State,* Del.Supr., 338 A.2d 562 (1975); and we find no basis for error in the ruling by the Superior Court denying the motion to dismiss.

## V.

Finally, defendant argues also that his rights were violated because on March 20, 1974 the State entered a *nolle prosequi* while he was awaiting a preliminary hearing in Municipal Court and thereafter indicted him on September 11, 1974. The State did not offer any explanation for these actions but defendant did not make an appropriate application to the Trial Court, see *State v. Hoffstein,* Del.Supr., 315 A.2d 594 (1974) and *State v. Fischer,* Del.Supr., 285 A.2d 417 (1971), to test the propriety of the indictment. It follows that the issue is not properly before us in this appeal.

Affirmed.